1
2024 CO 69 The People of the State of Colorado, Petitioner v. Pete Paul Martinez, Respondent No. 23SC197Supreme Court of Colorado, En BancNovember 4, 2024

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No.19CA175

2

         
Attorneys for Petitioner: Philip J. Weiser, Attorney General
William G. Kozeliski, Senior Assistant Attorney General
Denver, Colorado

         
Attorneys for Respondent: Megan A. Ring, Public Defender M.
Shelby Deeney, Deputy Public Defender Denver, Colorado

3

         
Justice Gabriel delivered the Opinion of the Court, in which
Chief Justice Márquez, Justice Boatright, Justice
Hood, Justice Hart, Justice Samour, and Justice Berken Kotter
joined.

         
OPINION

         
GABRIEL, JUSTICE

4

         ¶1
We granted certiorari to determine whether (1) testimony that
otherwise meets the requirements of CRE 702 and People v.
Shreck, 22 P.3d 68 (Colo. 2001), is rendered
inadmissible because the witness was not formally offered and
accepted as an expert during their testimony; and (2) it is
plain error to admit expert testimony without a formal offer
and acceptance when the record demonstrates that the
requirements of CRE 702 and Shreck have been met.

         ¶2
We now conclude that CRE 702 and our case law neither require
nor prohibit a formal offer and acceptance of an expert.
Accordingly, the lack of a formal tender and acceptance of
the expert does not alone render expert testimony
inadmissible, and such testimony is admissible if it
otherwise complies with the requirements of CRE 702 and
Shreck.

         ¶3
Applying these principles here, we further conclude that the
trial court did not err, much less plainly err, in admitting
Dr. Charles Harrison's testimony in this case. We
therefore reverse the judgment of the division below and
remand this case to allow the division to address the other
issues that Pete Paul Martinez raised and that the division,
in light of its determination, did not reach.

         I.
Facts and Procedural History

         ¶4
Martinez was charged with first degree murder, and he entered
a plea of not guilty by reason of insanity
("NGRI"). As required by law, the trial court
ordered

5

a sanity evaluation, which was conducted by Dr. Harrison, a
staff psychologist at the Colorado Mental Health Institute in
Pueblo. Dr. Harrison reviewed discovery, records from the
jail, and Martinez's mental health records, and he
interviewed Martinez for three hours. He then produced a
report in which he opined that Martinez was legally sane at
the time of the alleged offense. The Colorado Mental Health
Institute's superintendent sent this report to the court
in November 2017, over a year before trial, and the report
was apparently provided to the parties at or about that time.
Martinez later hired his own expert, Dr. Wells, to perform a
second sanity evaluation.

         ¶5
In advance of trial, the People filed a supplemental witness
list, noting which of its witnesses were experts and in what
field. Notably, this list did not include Dr. Harrison.
Thereafter, at the final pretrial conference, the People
explained that they had not endorsed Dr. Harrison as a
witness because they planned to call him only on rebuttal,
and only if Martinez chose to testify and raised something
that the People felt necessitated a response.

         ¶6
Approximately one week later, Martinez filed an Endorsement
of Defenses and Witnesses. In this document, he indicated
that he might rely on general denial and NGRI defenses at
trial.

         ¶7
Trial subsequently commenced, and on the first day of trial,
the People argued that Martinez had failed to disclose his
insanity defense in a timely fashion

6

and that the People had thought that Martinez had abandoned
that defense. Now that he had endorsed the defense for trial,
however, the People requested that the court order Martinez
to turn over anything that his sanity expert, Dr. Wells, had
relied on or produced, including any notes or
"summations" that she had prepared. Notably, in the
ensuing discussion, the court referred to Dr. Harrison and
Dr. Wells as the "two experts." The court
ultimately ordered Martinez's counsel to obtain from Dr.
Wells all documents in her file and to produce them to the
court for in camera review. The court stated that after
completing its review, it would determine which documents, if
any, Martinez would need to produce to the People and also
whether Dr. Wells would be permitted to testify.

         ¶8
The next day, the People filed a further supplemental witness
list, which included only Dr. Harrison. As they had done in
connection with the experts disclosed in their prior
supplemental witness list, the People also filed Dr.
Harrison's curriculum vitae. Unlike what they had done
with their prior supplemental witness list, however, and for
reasons that the record does not disclose, the People did not
specifically note that Dr. Harrison was an expert witness,
nor did they identify a field of expertise for him.

         ¶9
The case proceeded, and the People ultimately called several
expert witnesses. For each of these witnesses, the People
laid a foundation regarding the witness's qualifications
and expertise and then expressly tendered the witness as

7

an expert in a given field pursuant to CRE 702. By way of
example, the People tendered one of their expert witnesses,
Dr. Caruso, and the trial court admitted him as an expert, as
follows:

[Prosecutor]: Your Honor, at this time, pursuant to Colorado
Rule of Evidence 702, we would tender Dr. Caruso as an expert
in forensic pathology.

The Court: Any objection?

[Defense Counsel]: No objection.

The Court: He may offer opinions consistent with that rule.
Ladies and gentlemen, the reference is to Rule 702, that is a
rule of evidence that governs expert opinion testimony. He
may offer opinions consistent with the rule.

         ¶10
In contrast to the foregoing procedure, when the People
called Dr. Harrison, although they reviewed his
qualifications and expertise in psychology at length, they
did not expressly tender him as an expert. Nor did the court
expressly accept him as an expert or rule that he was
entitled to offer opinions consistent with CRE 702. The
People nonetheless proceeded as if Dr. Harrison's
qualifications had been accepted, ultimately asking for his
opinion as to Martinez's mental state at the time of the
offense at issue. Dr. Harrison reiterated his view that
Martinez was sane at the time he committed the offense.

         ¶11
Notably, at various points throughout the trial proceedings,
the People, the court, and defense counsel all referred to
Dr. Harrison as an "expert." In one exchange,
defense counsel even referred to Dr. Harrison as "the
expert who's been

8

endorsed by the prosecution for purposes of giving expert
opinion as to Mr. Martinez's mental state." In
addition, on four occasions, the People asked Dr. Harrison
for his "expert opinion," and Dr. Harrison twice
expressly labeled his testimony as reflecting his
"expert opinion" on a matter.

         ¶12
Although Martinez objected to certain questions as beyond the
scope of Dr. Harrison's expert opinion, what he had been
endorsed to testify to, what his report discussed, or
allowable opinion, he did not object to Dr. Harrison's
opining on Martinez's sanity, notwithstanding the lack of
a formal offer and acceptance of Dr. Harrison as an expert.
Similarly, although the People referred to Dr. Harrison as an
"expert" multiple times in their closing argument,
Martinez never objected to these characterizations. And
Martinez chose not to call his own sanity expert, Dr. Wells,
as a witness, thus undermining any suggestion that errors in
disclosure regarding Dr. Harrison prevented Martinez from
calling his own expert.

         ¶13
A jury ultimately convicted Martinez as charged, rejecting
his NGRI defense. Martinez appealed, contending, as pertinent
here, that the trial court had erred by admitting Dr.
Harrison's testimony without requiring that he be
formally offered and accepted as an expert witness.
People v. Martinez, No. 19CA175, ¶ 8 (Feb. 16,
2023). A split division of the court of appeals agreed and
reversed. Id.

         ¶14
The majority determined that "because Dr. Harrison was
neither offered nor admitted as an expert witness, he was
testifying only as a lay witness," and

9

because his testimony exceeded the scope of proper lay
testimony under CRE 701, his testimony was erroneously
admitted. Id. at ¶¶ 33, 40. The majority
purported to find support for this ruling in several cases
from this court discussing the requirements of expert witness
testimony. Id. at ¶¶ 34-44. The majority
further concluded that reversal was required "because
Dr. Harrison's testimony was central to proving that
Martinez was sane at the time of the charged crime."
Id. at ¶ 8. In light of its ruling, the
majority did not address the remaining issues that Martinez
had raised on appeal. Id.

         ¶15
Judge Tow dissented. In his view, Martinez had waived any
objection to Dr. Harrison's testimony by not challenging
the propriety of Dr. Harrison's offering expert opinions
despite knowing that he had not been formally tendered as an
expert. Id. at ¶¶ 73-79 (Tow, J.,
dissenting). Alternatively, Judge Tow concluded that any
error in admitting Dr. Harrison's testimony was not plain
and therefore reversal was unwarranted. Id. at
¶ 80. Lastly, Judge Tow noted that all of the cases on
which the majority relied to support its view that a formal
tender and acceptance was a prerequisite to the witness's
testifying as an expert were distinguishable because they
involved scenarios in which a witness was called as a fact
witness but then gave testimony that arguably strayed into
expert testimony. Id. at ¶¶ 62-68. In
contrast, this case involved an expert witness offering
expert testimony who simply had not been expressly tendered
as an expert. Id. at ¶ 69.

10

Moreover, Judge Tow observed that Dr. Harrison's
involvement in this case began when the court
appointed him as an expert, and his role never changed.
Id.

         ¶16
The People petitioned this court for certiorari review, and
we granted their petition.

         II.
Analysis

         ¶17
We begin by setting forth the applicable standard of review
and the basic principles concerning expert witness testimony
under the Colorado Rules of Evidence and our case law. We
then address the question of whether CRE 702 and our case law
require expert witnesses to be formally offered and accepted
as experts as a condition of admissibility. We conclude that
CRE 702 and our case law neither require nor prohibit such an
offer and acceptance for expert testimony to be admissible
and therefore, the trial court did not err, much less plainly
err, in admitting Dr. Harrison's testimony.

         A.
Standard of Review and Principles of Expert
Testimony

         ¶18
Whether CRE 702 requires a formal offer and acceptance of an
expert witness is a question of law that we review de novo.
Gonzales v. People, 2020 CO 71, ¶ 26, 471 P.3d
1059, 1063 ("The interpretation of a rule of evidence is
a question of law, which we review de novo.").

         ¶19
CRE 702, which governs expert testimony, provides, "If
scientific, technical, or other specialized knowledge will
assist the trier of fact to understand the

11

evidence or to determine a fact in issue, a witness qualified
as an expert by knowledge, skill, experience, training, or
education, may testify thereto in the form of an opinion or
otherwise."

         ¶20
In Shreck, 22 P.3d at 77-79, we announced what we
later described as a four-part test to guide a trial
court's exercise of discretion in considering the
admissibility of expert testimony under CRE 702: "(1)
the scientific principles underlying the testimony must be
reasonably reliable; (2) the expert must be qualified to
offer the testimony; (3) the testimony must be helpful to the
jury; and (4) the evidence must satisfy CRE 403."
People v. Cooper, 2021 CO 69, ¶ 1, 496 P.3d
430, 432 (citing Shreck, 22 P.3d at 77-79). In
addition, expert testimony in criminal cases must comply with
the discovery and disclosure requirements set forth in Crim.
P. 16.

         ¶21
CRE 701, in turn, governs lay opinion testimony. That rule
provides:

If the witness is not testifying as an expert, the
witness' testimony in the form of opinions or inferences
is limited to those opinions or inferences which are (a)
rationally based on the perception of the witness, (b)
helpful to a clear understanding of the witness'
testimony or the determination of a fact in issue, and (c)
not based on scientific, technical, or other specialized
knowledge within the scope of Rule 702.

Id.

         ¶22
In Venalonzo v. People, 2017 CO 9, ¶ 16, 388
P.3d 868, 873, we provided guidance regarding how courts are
to distinguish lay from expert testimony:

12

[I]n determining whether testimony is lay testimony under CRE
701 or expert testimony under CRE 702, the trial court must
look to the basis for the opinion. If the witness provides
testimony that could be expected to be based on an ordinary
person's experiences or knowledge, then the witness is
offering lay testimony. If, on the other hand, the witness
provides testimony that could not be offered without
specialized experiences, knowledge, or training, then the
witness is offering expert testimony.

         B.
Offer and Acceptance of an Expert

         ¶23
The People contend that the majority below erred in
concluding that CRE 702 and our case law require, as a
condition of the admissibility of expert testimony, that the
witness be formally tendered by a party and admitted by the
court as an expert. We agree.

         ¶24
As an initial matter, we note, contrary to the majority's
opinion below, Martinez, ¶¶ 33, 40, that
under Venalonzo, ¶ 16, 388 P.3d at 873, Dr.
Harrison was testifying as an expert witness because, as the
trial court and all parties below appear to have agreed, his
testimony was indisputably based on "specialized
experiences, knowledge, or training." The character of
Dr. Harrison's testimony did not change merely because
the People did not formally tender and the court did not
admit him as an expert.

         ¶25
The question thus becomes whether Dr. Harrison's
testimony was rendered inadmissible by the absence of a
formal offer and acceptance of him as an expert. We conclude
that it was not.

13

         ¶26
As noted above, CRE 702's plain text requires that a
witness be qualified as an expert based on knowledge, skill,
training, or education and that the witness's testimony
be helpful to the trier of fact. Our case law has further
determined that CRE 702 requires that the scientific
principles underlying the expert's testimony be
reasonably reliable and that the evidence satisfy the
requirements of CRE 403. See Cooper, ¶ 1, 496
P.3d at 432; Shreck, 22 P.3d at 77-79. We perceive
nothing in CRE 702's express language or in our case law
that requires that an expert witness be formally offered and
accepted as a condition of admissibility, and we decline to
adopt such a requirement now.

         ¶27
We are not persuaded otherwise by Martinez's contention
that the word "qualified" in CRE 702 implies an
offer and acceptance requirement because, in his view, it is
used as a verb requiring action to qualify the witness. To
the contrary, CRE 702 uses the word "qualified" as
an adjective modifying the word "witness."
Specifically, under CRE 702's plain language, witnesses
are "qualified" when they have certain
qualifications, namely, knowledge, skill, experience,
training, or education in the field in which they will offer
opinion testimony. See Shreck, 22 P.3d at 78 (noting
that CRE 702 requires a determination as to, among other
things, "the qualifications of the witness");
see also Melville v. Southward, 791 P.2d 383, 387
(Colo. 1990) (stating that the court must determine, among
other things, "whether the witness is properly qualified
by knowledge, skill, experience,

14

training, or education, to offer an opinion on the issue in
question"). Thus, the word "qualified" in CRE
702 does not refer to an action taken by a party or the
court. Rather, it refers to a quality of the witness. In
other words, a witness is not qualified by a court
or a party, but rather a witness is qualified because
of their "knowledge, skill, experience, training,
or education." CRE 702.

         ¶28
We likewise are unpersuaded by Martinez's citation to
cases from this court that he interprets as requiring that an
expert witness be formally offered and accepted as a
condition of admissibility. Contrary to Martinez's
assertions, none of the cases on which he relies addressed
the issue now before us, and, in any event, the cases are
distinguishable on their facts.

         ¶29
For example, in People v. Stewart, 55 P.3d 107, 124
(Colo. 2002), we said that a witness "must be properly
qualified as an expert before offering testimony that amounts
to expert testimony." Similarly, in Venalonzo,
¶ 6, 388 P.3d at 871, we noted that the trial court had
"declined to require the People to qualify [a forensic]
interviewer as an expert." And in People v.
Ramos, 2017 CO 6, ¶ 1, 388 P.3d 888, 890, we
affirmed the court of appeals division's holding that
"the trial court abused its discretion by not qualifying
the police detective's blood testimony as expert
testimony."

15

         ¶30
We, however, did not make these statements in the context of
addressing whether the formal offer and acceptance of an
expert was a condition of admissibility. Indeed, none of
these cases presented that issue.

         ¶31
In any event, the cases on which Martinez relies are
distinguishable from the present case. Specifically,
Stewart, Venalonzo, and Ramos all
involved scenarios in which what is essentially expert
testimony was improperly admitted in the guise of lay
opinion. See Ramos, ¶ 9, 388 P.3d 891;
Venalonzo, ¶ 30, 388 P.3d at 877;
Stewart, 55 P.3d at 123. In each of these cases, a
witness was characterized as a fact or lay witness by the
prosecution and the trial court, but then the witness offered
what was ultimately determined to be expert testimony.
See Ramos, ¶¶ 3, 9-11, 388 P.3d at 890-91;
Venalonzo, ¶¶ 5-7, 26-31, 388 P.3d at
871-72, 875-77; Stewart, 55 P.3d at 122-24.
Moreover, because the witnesses were proffered as fact
witnesses, the People in these cases did not make any of the
pretrial disclosures required of expert testimony, thereby
depriving the defendants of, among other things, an
opportunity to obtain their own expert witnesses. See
Venalonzo, ¶ 50, 388 P.3d at 881 (noting that, if
the defendant had the benefit of pretrial disclosure of the
forensic interviewer's expert testimony and the bases for
her opinions, then he would have had an opportunity to
evaluate her testimony in advance of trial or to obtain his
own expert witness); Stewart, 55 P.3d at 123
(observing that admitting expert testimony in the guise of
lay testimony subverts the disclosure and

16

discovery requirements of the applicable rules, as well as
the reliability requirements for expert testimony).

         ¶32
Our concern in these cases regarding the absence of the
required expert disclosures and the denial of the other
procedural protections afforded by the applicable rules of
criminal procedure is not an issue in this case. Here, unlike
in the above-described cases, the People did not attempt to
evade expert witness disclosure requirements, nor did they
call an expert witness in the guise of a lay witness. Cf.
Stewart, 55 P.3d at 123 n.10. To the contrary, the trial
court and the parties at all times treated Dr. Harrison as an
expert, and the People substantially complied with Crim. P.
16's disclosure requirements. Indeed, Martinez appears to
have received Dr. Harrison's expert report over a year
before trial, and he was able to use that report in framing
objections to the scope of Dr. Harrison's testimony. And
Martinez had every opportunity to retain his own expert,
which he did, although he ultimately declined to call her at
trial.

         ¶33
For similar reasons, we are unpersuaded by Martinez's
reliance on language in Farley v. People, 746 P.2d
956 (Colo. 1987), which he also characterizes as
demonstrating that the formal offer and acceptance of an
expert are required. In Farley, 746 P.2d at 958, the
trial court stated that it had accepted a witness as an
expert, but we observed that the record did not support the
court's recollection. It is in this context that we
pointed out that the witness "was neither offered nor

17

accepted as an expert." Id. In other words, we
were simply responding, as a factual matter, to what the
trial court had misremembered. We did not address or opine in
that case on the necessity of a formal offer and acceptance
of an expert witness.

         ¶34
Finally, we note that, in supporting its conclusion that a
formal offer and acceptance are required as a condition of
the admissibility of expert testimony, the majority below
relied on our decision in Cooper, ¶ 1, 496 P.3d
at 431-32. Martinez, ¶¶ 43, 47. That case,
too, is inapposite. In Cooper, ¶ 1, 496 P.3d at
431-32, we began by noting the general principle that the
trial court must act as a gatekeeper to ensure that expert
testimony is not admitted unless it is both reliable and
relevant. Nothing in Cooper, however, suggested that
a party must formally offer and the court must formally
accept a witness as an expert before the witness may testify.
In discussing the trial courts' gatekeeper function, we
were simply reiterating the settled principle that trial
courts are responsible for ensuring that expert testimony
satisfies the requirements of CRE 702 and Shreck.
See Cooper, ¶ 1, 496 P.3d at 431-32.

         ¶35
For these reasons, we conclude that a party calling an expert
witness need not formally offer, and the trial court need not
formally accept, the witness as an expert as a condition of
the admissibility of the expert's testimony. Accordingly,
we conclude that the majority below erred in imposing such a
requirement.

18

         ¶36
In so concluding, we hasten to add that a formal offer and
acceptance of an expert are not prohibited, either. Indeed,
it is often good practice for a party to tender an expert in
a particular field and for the trial court to make findings,
whether before or during trial, as to that expert's
qualifications and the proper scope of the expert's
testimony. Such findings can clarify for the parties and
perhaps the jurors the proper limits of the expert's
testimony. Nonetheless, when, as here, no party objects to
the admissibility of the proffered expert's testimony,
the lack of findings on the record will not necessarily
render the expert testimony inadmissible. See Ruibal v.
People, 2018 CO 93, ¶ 13, 432 P.3d 590, 593 (citing
prior case law for the proposition that "where a
proper challenge has been raised, a trial court 'is
required to issue specific findings' as to relevance and
reliability under CRE 702") (emphasis added) (quoting
People v. Rector, 248 P.3d 1196, 1200 (Colo. 2011)).

         ¶37
In reaching our conclusion in this case, we recognize that
for many trial judges and lawyers, the practice of having a
party formally tender and the court formally accept an expert
has become routine, and we do not intend to suggest that this
procedure is categorically improper. We further recognize,
however, that in a given case, opposing counsel, as a matter
of sound trial strategy, might not want the trial court to
endorse the witness's expertise before the jury. And we
fully understand why many trial judges prefer not to do so
(hence, rather than

19

informing the jury that the court will accept the witness as
an expert in a given field, many trial judges prefer to
announce that the court will allow the witness to offer
opinion testimony under CRE 702, the rule governing expert
testimony, as the trial court did here).

         ¶38
We perceive no reason to dictate a procedure that trial
judges and lawyers must follow in all circumstances. It
suffices for us to say that a party proffering expert
testimony is obliged to comply with the procedural rules
governing such testimony and to lay a proper foundation for
that testimony. The trial court, in turn, is responsible for
ensuring that admitted expert testimony complies with the
requirements of CRE 702 and Shreck and that the
proffering party adhered to the applicable procedural rules,
so as not to prejudice the opposing party. Whether errors in
any of these regards require reversal will depend on the
specific circumstances of a given case.

         III.
Conclusion

         ¶39
For these reasons, we conclude that CRE 702 and our case law
do not require that a party formally offer and that a court
formally accept a witness as an expert as a condition of the
admissibility of proffered expert testimony. To the contrary,
when expert testimony meets the requirements of CRE 702 and
Shreck, the lack of a formal offer and acceptance of
the expert does not necessarily render the expert's
testimony inadmissible.

20

         ¶40
Applying these principles here, we conclude that the trial
court did not err, much less plainly err, in admitting Dr.
Harrison's expert testimony despite the fact that the
People did not formally offer and the trial court did not
formally accept him as an expert witness. We therefore
reverse the judgment of the division below and remand this
case to allow the division to address the issues that
Martinez raised below and that the division, in light of its
determination, did not reach.